UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                                 )
          v.               )    Cr. No. 21-cr-10270-MLW
                                 )
ATICHA JITTAPHOL,          )
    Defendant.        )

MEMORANDUM AND ORDER

WOLF, D.J.                                  April 18, 2022

I. SUMMARY

On September 13, 2021, defendant Aticha Jittaphol was charged with two counts of making false statements in violation of 18 U.S.C. §1001(a)(2) for falsely certifying in COVID-19 relief loan applications to the federal government that the massage business she owned, Mantra Dhevi Spa, was not engaged in any illegal activity under federal, state, or local law. In fact, as Jittaphol has since admitted, her massage business was providing commercial sex acts to customers in violation of state laws relating to prostitution.

Jittaphol was released on personal recognizance subject to conditions of release on October 26, 2021. See Dkt. No. 12. Since her release, Probation has filed four petitions that the court is addressing,[1] which allege that Jittaphol has committed numerous

---

[1] On April 14, 2022, Probation filed another petition alleging that Jittaphol had tested positive again for methamphetamine. As explained in this Memorandum, the court had by April 14, 2022 decided to revoke Jittaphol's release. It has not considered or

violations of these conditions, including: testing positive for prohibited substances three times; failing to report to a substance abuse treatment program as directed by Probation two times; failing to participate in long-term inpatient substance abuse treatment as directed by Probation; failing to fully participate in outpatient substance abuse treatment two times; and failing to inform Probation and seek its permission before changing employment. See Dkt. Nos. 17, 21, 39-1, 58.

The court conducted hearings concerning the then pending alleged violations on January 20, 2022 and March 8, 2022, but did not decide them. On March 8, 2022, the court did modify Jittaphol's conditions of release to include additional requirements. It informed Jittaphol that it was essential that she comply fully with the conditions of her release. She promised to do so. However, two days later, she failed to attend a required outpatient drug counseling session. About a week later, she failed to attend a required session of Crystal Methamphetamine Anonymous ("CMA"). In addition, a sweat patch worn by Jittaphol from March 1 to 8, 2022 tested positive for methamphetamine. Therefore, these alleged violations were included in another petition.

The court conducted an evidentiary hearing concerning the violations in all of the pending petitions on April 1, 4, and 8,

---

relied upon the unadjudicated April 14, 2022 allegation in issuing this Memorandum and Order.

2

2022. Jittaphol and her Probation officer testified. Jittaphol's testimony was not credible in material respects.

In summary, the court finds that there is probable cause to believe that Jittaphol committed a state and federal crime while on release by using and, therefore, possessing methamphetamine three times. The court also finds by clear and convincing evidence that Jittaphol committed six other violations of the conditions of her pretrial release. Because Jittaphol has repeatedly violated conditions of her release, despite multiple admonitions by both Probation and the court, the court finds by a preponderance of the evidence that Jittaphol is unlikely to abide by any condition or combination of conditions of release. Therefore, pursuant to 18 U.S.C. §3148, the court is revoking Jittaphol's pretrial release.

Jittaphol entered into a Federal Rule of Criminal Procedure 11(c)(1)(C) binding plea agreement which, if accepted, would require Jittaphol be sentenced to three years probation rather than any time in custody. The court expressed skepticism concerning whether it would find such a sentence sufficient. However, at Jittaphol's Rule 11 hearing, the court accepted her guilty plea and deferred until sentencing its decision concerning whether to accept the binding plea agreement. As Jittaphol's release is now being revoked, and she will serve time in custody before her sentencing in June 2022 that would be credited against any prison sentence, it will not be possible for the court to impose a

sentence that includes no time in custody. Therefore, the court is now rejecting the binding plea agreement and giving Jittaphol until May 2, 2022 to inform the court of whether she elects to withdraw her guilty plea. See Fed. R. Crim. P. 11(c)(5)(A), (B). If she does not withdraw her guilty plea, her sentence will necessarily be less favorable than the plea agreement contemplates. See Fed. R. Crim. P. 11(c)(5)(C).

II. LEGAL STANDARD

Under 18 U.S.C. §3148(a), "the court shall enter an order of revocation and detention if, after a hearing," it:

(1) finds that there is—

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that—

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. §3148(b).[2]

---

[2] "An affirmative finding on the first prong helps lead to an affirmative finding on the second prong: once there is probable cause to believe that the person 'committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or

"[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail." United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)); see also United States v. Aron, 904 F.2d 221, 227 (5th Cir. 1990).

The "clear and convincing" standard is "demanding." Spence v. Superintendent, 219 F.3d 162, 172 (2d Cir. 2000). The Supreme Court has instructed that the standard is met only when a party can "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316 (1984). This standard is satisfied only when "the material [one party] offered instantly tilted the evidentiary scales in [its favor] when weighed against the evidence [the other party] offered in opposition." Id. The First Circuit

---

combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.'" United States v. Alfonso, 284 F. Supp. 2d 193, 202 (D. Mass. 2003) (quoting 18 U.S.C. §3148(b)). This presumption requires the defendant to produce "some evidence" to rebut it. United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990). "When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). The presumption is not material to the court's decision in this matter, which is based on the finding that Jittaphol is unlikely to abide by any condition or combination of conditions of release, rather than risk of flight or danger to the community.

has described the standard as "more than a preponderance but less than beyond a reasonable doubt." In re Pratt, 462 F.3d 14, 21 (1st Cir. 2006); see also United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984), aff'd, 755 F.2d 203 (1st Cir. 1985).

Under §3148(b)(2), "a district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." Aron, 904 F.2d at 224; see also Gotti, 794 F.2d at 778.

III. THE FACTS

The following facts have been proven by a preponderance of the evidence, which includes testimony by Jittaphol and a Probation officer, and 36 exhibits.[3]

On September 13, 2021, Jittaphol was charged by Information with two counts of making false statements in violation of 18 U.S.C. §1001(a)(2). See Dkt. No. 1. On the same day, the parties submitted a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). See Dkt. No. 4. A revised binding plea agreement was filed on October 22, 2021. See Dkt. No. 7. Under the plea agreement, the parties agreed to a sentence of no incarceration, 36 months probation, and restitution in the amount of $7,066. See id. at ¶1.

---

[3] As indicated earlier, the court finds that Jittaphol's testimony was often not credible. Despite vigorous cross-examination, the court finds her Probation officer's testimony was reliable in all material respects.

At her initial appearance before the Magistrate Judge on October 26, 2021, Jittaphol was released on personal recognizance subject to conditions of release. See Order Setting Conditions of Release (Dkt. No. 12). These conditions required, among other things, that Jittaphol: not violate a state or federal law; not use or unlawfully possess a controlled substance unless prescribed by a medical practitioner; submit to testing for prohibited substances; and participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the Pretrial Services Office or her supervising officer. See id. at 2-3.

Three days later, on October 29, 2021, Jittaphol tested positive for amphetamines and told Probation that she used methamphetamine daily. See Ex. 1, November 19, 2021 Petition for No Action (Dkt. No. 17) at 2. Jittaphol admitted this violation at the April 1, 2022 hearing concerning the alleged violations of her pretrial release. Therefore, there is probable cause to believe that Jittaphol committed a state and federal crime by using and, therefore, possessing methamphetamine. See 21 U.S.C. §844; M.G.L. ch. 94C, §34. In addition, her admission provides clear and convincing evidence that Jittaphol violated a condition of her pretrial release.

On November 19, 2021, Probation filed a petition advising the court of this violation, but requesting no action because Jittaphol was "amenable to receiving treatment to stop her illicit substance

abuse." See Ex. 1, November 19, 2021 Petition for No Action (Dkt. No. 17) at 2. Probation directed Jittaphol to participate in an inpatient detox treatment program at SSTAR in Fall River, Massachusetts. See id. The court followed Probation's recommendation and did not then act on the alleged violation. However, in doing so, it wrote that "Probation shall report promptly if defendant does not properly participate in detox or otherwise violates the conditions of her release." Id.

On November 22, 2021, Jittaphol failed to report to the SSTAR program during intake hours as directed by Probation. See Ex. 2, January 11, 2022 Petition for Hearing (Dkt. No. 21). On April 4, 2022, Jittaphol testified that she failed to report on November 22, 2021 as directed because she could not find someone to take care of her dog. See Apr. 4, 2022 Tr. at 90:24-91:11.

After Probation rescheduled her admission for November 30, 2021, Jittaphol again failed to report during intake hours and was denied placement in the SSTAR program. See id. at 91:12-92:2; see also Ex. 6, March 31, 2022 Probation Release Status Report ("Release Status Report"). Jittaphol testified that she did not report during intake hours on November 30, 2021 due to heavy traffic. See Apr. 4, 2022 Tr. at 91:16-92:2.

On April 1, 2022, Jittaphol admitted that she failed to report twice to SSTAR during intake hours despite being instructed to do so by Probation. Therefore, there is clear and convincing evidence

to believe that Jittaphol committed two additional violations of the conditions of her pretrial release.

On December 1, 2021, Probation arranged for Jittaphol to enter an inpatient detox treatment program of the Behavioral Health Network ("BHN"). On December 3, 2021, Probation was notified that a bed was available for Jittaphol at BHN, and Probation directed her to report for admission. See Ex. 7, Pretrial Services Chronological Record Report ("Chron. Record"); Ex. 6, Release Status Report at 1-2. Once again, Jittaphol failed to report as instructed. See Ex. 7, Chron. Record at 11 ("Again, [Jittaphol] has not arrived to a detox bed when that was the directive."); Ex. 6, Release Status Report at 2. This failure to report as directed on December 3, 2021 is not alleged as a violation of Jittaphol's conditions of pretrial release in the pending petitions, but is nevertheless relevant to whether Jittaphol will obey any combination of conditions of release in the future.

When another bed became available, Jittaphol reported to BHN as instructed on December 6, 2021, and was admitted for detox services. See Ex. 7, Chron. Record at 11-12; see also Ex. 2, January 11, 2021 Petition for Hearing (Dkt. No. 21) at 2. At BHN, Jittaphol completed about one week of detox treatment followed by about two weeks of short-term inpatient treatment. See Ex. 7, Chron. Record at 19, 22; see also Ex. 6, Release Status Report at 2.

On January 4, 2022, Colleen Fenton of BHN reported to Jittaphol's Probation officer, Maureen Curran, that:

> I feel like the only aspect of programming that Aticha did not comply with was with an aftercare plan. She refused both long term treatment as well as IOP [Intensive Outpatient Treatment], despite counseling recommendations as well as the recommendations of our aftercare counselors.

Ex. 7, Chron. Record at 24.

Similarly, a BHN Discharge Summary dated January 3, 2022, after noting that Jittaphol had made "great strides" in some respects, stated that:

> Ms. Jittaphol met with aftercare, however, when presented with options for long-term treatment in a residential facility or being set up with IOP Ms. Jittaphol was very closed-minded, and refused both.

Ex. 36, Discharge Summary at 2.[4] The Discharge Summary also stated that:

> Ms. Jittaphol met with aftercare staff, however declined long-term residential treatment and IOP [Intensive Outpatient

---

[4] The Discharge Summary, Exhibit 36, was sent by Probation to the parties and the court in January 2022. However, it was not referenced in the hearings on the petitions concerning the alleged violations until Probation referred to it after the attorneys' closing arguments on April 8, 2022. The same day, the court ordered the attorneys to state whether they objected to the Discharge Summary being made an exhibit in evidence. See Dkt. No. 72. On April 9, 2022, Jittaphol reported that she did not object, but raised questions concerning the reliability of the document and argued the implications of it. See Dkt. No. 73. On April 11, 2022, the government and Probation agreed that the Discharge Summary should be admitted as evidence. See Dkt. No. 75. Therefore, the court has admitted it as Exhibit 36. While relevant, the information in the Discharge Summary is not material to the court's decision to revoke Jittaphol's release. If the Discharge Summary had not been introduced or considered, the court's decision would have been the same.

Treatment]. Ms. Jittaphol refused to complete referrals and stated that she only wanted to return home.

Id. at 3. With regard to "Relapse/Continued Use Potential," the Discharge Summary stated "High." Id.

After learning that Jittaphol had left BHN on December 27, 2021, as alleged in the January 11, 2022 Petition, Probation "directed the defendant to reengage in long-term inpatient treatment services." Ex. 2, January 11, 2021 Petition for Hearing (Dkt. No. 21) at 2. More specifically on January 7, 2022, Jittaphol spoke with her Probation officer about long-term treatment. See Ex. 7, Chron. Record at 25. The Probation officer then "informed her that if she does not participate in long term care, the Court will be notified as this is the treatment recommendation that probation is adhering to. [Jittaphol] reports she understands the Court will be notified." See id. Nevertheless, Jittaphol refused to participate in long-term inpatient treatment. See id.; Ex. 2, January 11, 2021 Petition for Hearing (Dkt. No. 21) at 2; Ex. 6, Release Status Report at 2.

The court finds by clear and convincing evidence that Jittaphol's refusal in January 2022 to participate in long-term inpatient treatment, as directed by Probation, is another violation of the conditions of her pretrial release.

Jittaphol and her lawyer assert that she did not violate the conditions of her release because Probation's directive was not

11

based on a clinical evaluation or clinical recommendation as stated in the January 11, 2022 Petition. See Ex. 2, January 11, 2021 Petition for Hearing (Dkt. No. 21) at 2. However, as explained earlier, on January 4, 2022, a treatment provider from BHN told Probation that Jittaphol "refused both long term treatment as well as [intensive outpatient treatment], despite counseling recommendations as well as the recommendations of our aftercare counselors." Ex. 7, Chron. Record at 24.[5] In addition, as also explained earlier, this information is consistent with Jittaphol's Discharge Summary, which states that "Jittaphol met with aftercare, however, when presented with options for long-term treatment in a residential facility or being set up with [intensive outpatient treatment] Ms. Jittaphol was very closed-minded, and refused both." Ex. 36, Discharge Summary at 2.

Jittaphol's counsel ardently argues that it was improper for Jittaphol to have been directed to participate in inpatient treatment without a clinical analysis of whether it was required,

---

[5] Jittaphol notes that the Pretrial Services Chronological Record Report also states that the Probation officer spoke with the treatment provider on the phone, and the treatment provider stated that she "believes if [Jittaphol] participates in [intensive outpatient care] that is sufficient." Id. However, on April 1, 2022, Jittaphol's current Probation officer testified that she understood this to mean that, "given [Jittaphol] had already discharged at that point, [the provider] was recommending intensive outpatient treatment to address her aftercare plan." Apr. 1, 2022 Tr. at 44:9-11 (emphasis added).

and that she did not need it. See, e.g., Defendant Motion for Funds for Addiction Expert concerning Probation Conditions (Dkt. No. 23) at 2-3; Defendant Opposition to Probation Revocation (Dkt. No. 24) at 2-5; Defendant Memorandum concerning Probation Petition (Dkt. No. 48) at 8. He also argues that although he did not file a motion asking the court to modify Probation's direction,[6] he did prompt Probation to file a petition to obtain a decision by the court concerning whether Jittaphol should have been required to participate in inpatient treatment. These arguments are relevant to the weight the court should give to Jittaphol's refusal to follow Probation's January 2022 direction to participate in inpatient treatment. They do not, however, alter the fact that the conditions of Jittaphol's pretrial release require that she "participate in a program of inpatient or outpatient treatment substance abuse therapy and counseling if directed by the pretrial services office or supervising officer." Dkt. No. 12 (emphasis added). This condition does not require that Probation base its direction on a clinical evaluation or recommendation.

---

[6] On January 19, 2022, Jittaphol did request modification of a condition of release restricting her to Massachusetts. She filed a motion requesting that the court allow her to travel outside of Massachusetts to play volleyball and work, after Probation told her that she could not travel to participate in out-of-state volleyball tournaments. See Dkt. No. 25; see also Ex. 7, Chron. Record at 25. The court denied this request. See Jan. 20, 2022 Tr. (Dkt. No. 36) at 45:23-25.

On January 11, 2022, Probation filed a Petition for Hearing to address this issue. See Ex. 2, January 11, 2022 Petition for Hearing (Dkt. No. 21). On January 20, 2022, the court conducted a hearing to address the two pending petitions alleging violations of Jittaphol's conditions of pretrial release, as well as her request to waive indictment and plead guilty. At the hearing, the court expressed concern about the sufficiency of the parties' agreed-upon sentence of three years of probation and whether the binding plea agreement would ultimately be accepted. See Jan. 20, 2022 Tr. (Dkt. No. 36) at 16:11-29:8.

The court continued the hearing and ordered the parties to file supplemental memoranda addressing why the court should accept Jittaphol's waiver of indictment and guilty plea and why the parties' agreed-upon sentence should be found to be sufficient. See January 21, 2022 Order (Dkt. No. 30).

The court also did not decide whether the alleged violations of Jittaphol's pretrial release were proven. The court did, however, order that Probation test Jittaphol for prohibited substances on a weekly basis and report any failed test, or failure to be tested, to the court. See id.

On February 7, 2022, Probation filed another Petition for Summons. See Ex. 3, February 7, 2022 Petition for Summons (Dkt. No. 39-1). Probation reported that a sweat patch drug test worn by Jittaphol from January 20, 2022 to January 27, 2022 tested positive

14

for methamphetamine. See id. In addition, Probation reported that "Jittaphol was offered inpatient treatment to address this relapse and [she] refused to participate in inpatient services." Ex. 6, Release Status Report at 2.

On March 8, 2022, the court conducted another hearing to address Jittaphol's waiver and change of plea, as well as the alleged violations of Jittaphol's pretrial release. At the hearing, Jittaphol waived indictment and pled guilty to both counts in the Information. The court accepted Jittaphol's guilty plea and deferred until her sentencing on June 14, 2022 the decision of whether to accept the plea agreement or offer Jittaphol the opportunity to withdraw her guilty plea. See Fed. R. Crim. P. 11(c)(3), (4), (5). The court also continued the hearing to address the alleged violations in the November 19, 2021, January 11, 2022, and February 7, 2022 Petitions (Dkt. Nos. 16, 20, 38).

In addition, the court modified Jittaphol's conditions of release to include the following conditions:

> (1) The defendant must fully and properly participate in outpatient substance abuse treatment with CPC Boston as directed by the Probation Office.
>
> (2) The defendant must fully and properly participate in Crystal Meth Anonymous (CMA) as directed by the Probation Office.
>
> (3) The defendant must fully inform the Probation Office concerning her current employment so it can decide if that employment is permissible and appropriate. In addition, defendant must seek and receive the permission of the

Probation Office before changing employment or engaging in additional employment.

(4) The defendant must submit to urine testing for prohibited substances, observed by a male Probation officer, on a weekly basis. The defendant must also submit to sweat patch testing for prohibited substances on a weekly basis.

March 9, 2022 Order (Dkt. No. 55); see also Mar. 8, 2022 Tr. at 29:11-30:6, 34:3-7.

At the March 8, 2022 hearing, the court discussed these conditions with Jittaphol. The court asked Jittaphol if she was "prepared to fully participate as directed in the CPC [Counseling and Psychotherapy Center] program . . . [a]nd also to go to all the required meetings of Crystal Meth Anonymous?" Mar. 8, 2022 Tr. at 29:12-16. Jittaphol responded, "[y]es." Id. at 29:11, 14. Jittaphol's attorney also stated that she was "fully prepared to comply with the outpatient treatment recommendation." Id. at 27:9-11. After the hearing, Jittaphol's Probation officer met with her and "discussed the new conditions that were verbally ordered." Apr. 4, 2022 Tr. at 68:20-21. The new conditions orally ordered on March 8, 2022 were memorialized in a March 9, 2022 written Order. See Dkt. No. 55.

However, two days after the March 8, 2022 hearing, on March 10, 2022, Jittaphol failed to attend her next scheduled treatment session with CPC Boston. See Ex. 4, March 28, 2022 Petition for Summons (Dkt. No. 58). Jittaphol testified that she missed this meeting because she stayed out late the night before after

16

attending a Narcotics Anonymous meeting with a friend. See Apr. 4, 2022 Tr. at 101:21-25.

In addition, on March 26, 2022, Jittaphol failed to attend her scheduled Crystal Meth Anonymous session. See Ex. 4, March 28, 2022 Petition for Summons (Dkt. No. 58). Jittaphol testified that she missed this session because she stayed out late the night before at a friend's wedding and overslept. See Apr. 4, 2022 Tr. at 107:3-6.

As Jittaphol has admitted to failing to attend both sessions as directed,[7] there is clear and convincing evidence that she committed two additional violations of the conditions of her pretrial release.

In addition, a sweat patch worn by Jittaphol from March 8, 2022 to March 18, 2022 tested positive for methamphetamine. See id. Urinalysis drug tests from March 1, 2022, March 8, 2022, and March 24, 2022 tested negative for prohibited substances. See Ex. 6, Release Status Report at 2.

---

[7] The court also notes that Jittaphol's reasons for missing both sessions -- staying out late the night before each session -- are not acceptable excuses for failing to comply with the conditions of her pretrial release. As the court explained to Jittaphol on March 8, 2022, "[t]hat's not the way this works. You can't say, 'I prefer to do something else.' You have to do what I order you to do and what Probation tells you to do." Mar. 8, 2022 Tr. at 29:4-6.

The court finds that there is probable cause to believe that Jittaphol possessed and used methamphetamine in January 2022 and between about March 8 and 18, 2022. The evidence in this case persuades the court that sweat patches are generally, but not always, a reliable method of drug testing.[8] The sweat patch test, marketed by PharmChem, Inc., is "comprised of an absorbent pad, covered with a unique polyurethane dressing. . . . Drugs excreted in sweat are trapped by this polyurethane dressing and retained on the white absorption pad." Ex. 19, PharmChem, Inc., PharmChek Drugs of Abuse Sweat Patch Technical Questions and Answers Inc. (May 2017) at 16. The sweat patch is applied to the wearer's skin, worn for about 7-10 days, then removed and sent to PharmChem for testing. See id. at 5, 16; Ex. 28, PharmChem, Inc., PharmChek Analysis Panels at 1, 3.

In 1995, the Food & Drug Administration ("FDA") approved PharmChem's sweat patch for drug testing, including testing for amphetamines. See Ex. 18, PharmChem Receives FDA Market Approval for PharmChek Sweat Patch, Business Wire (July 16, 1995). In order to do so, the FDA was required to find that the sweat patch testing

---

[8] This conclusion is consistent with the findings of several other courts. See, e.g., United States v. Meyer, 483 F.3d 865, 868 (8th Cir. 2007) ("[S]weat patch results are a generally reliable method of determining whether an offender has violated a condition of his or her probation."); United States v. Gatewood, 370 F.3d 1055, 1060-62 (10th Cir.2004), vacated on other grounds, 543 U.S. 1109 (2005); United States v. Snyder, 187 F. Supp. 2d 52, 60 (N.D.N.Y. 2002).

device "is as safe and effective as a legally marketed device." 21 U.S.C. §360c(i).

In addition, the Administrative Office of the United States Courts has found that sweat patch tests are sufficiently reliable for use by Probation. See Ex. 18, Administrative Office of the United States Courts, Memorandum to Chief Probation Officers & Chief Pretrial Services Officers on Testing and Reporting of Metabolite Levels in Sweat Patches (Jan. 30, 2001) (Dkt. No. 66-2).[9]

The proven facts in this case also support the court's conclusion that there is probable cause to believe that the two positive sweat patch tests resulted from Jittaphol's possession and use of methamphetamine. Jittaphol's sweat patches tested positive for methamphetamine twice. While the court recognizes that there is a risk that a single positive sweat patch result may be false, it is less likely that two tests will result in false positives. In addition, Jittaphol did not test positive for cocaine, heroin, or any other controlled substance.[10] Jittaphol has

---

[9] Other courts have also cited the Administrative Office of the United States Courts' authorization of the use of sweat patch testing as indicia of its general reliability. See e.g., Meyer, 483 F.3d at 869 ("Today, the sweat patch is a widely used method for drug testing that is authorized by the Administrative Office of the United States Courts."); Alfonso, 284 F. Supp. 2d. at 195-96 (describing history of sweat patch use by Probation).

[10] The court also notes that one of the articles submitted by Jittaphol, which concerns sweat patch testing for opiate use,

admitted to being addicted to methamphetamine and, as previously explained, has not fully participated in the substance abuse treatment prescribed by Probation. This makes it more likely that the positive sweat patch results are reliable.[11]

The court also notes that each of the sweat patches that tested positive were applied to Jittaphol on days that she appeared in court for hearings concerning alleged violations of her pretrial release. Jittaphol testified that she has used methamphetamine in order to relax at particularly stressful times, see Apr. 4, 2022 Tr. at 85:12-87:24, and that this case is stressful for her, see id. at 105:14-16.

Jittaphol notes her multiple negative urinalysis tests and argues that the positive sweat patch test results are unreliable.[12]

---

indicates that false negatives may be more common than false positive results. See Ex. 29, Huestis et al., Monitoring Opiate Use in Substance Abuse Treatment Patients with Sweat and Urine Drug Testing, Journal of Analytical Toxicology 509, 509 (2000) ("There were 13.5% false-negative and 7.9% false-positive sweat results as compared to urine tests.").

[11] Similarly, in United States v. Foley, the court explained that "the fact that the defendant was a regular cocaine user for eight months prior to his initial arrest [] lends support to the Court's finding that the positive results are the result of use rather than contamination or unknowing exposure to cocaine. Conversely, the probability would be far less if the person had not used drugs prior to arrest." Cr. No. 2007-1039-RGS-1, 2008 WL 4787546, at *3 (D. Mass. Oct. 29, 2008).

[12] Jittaphol has male genitalia, but identifies as a female. Probation began testing Jittaphol with sweat patches because Jittaphol "reported not wanting to be observed by a male officer during observed urine collections . . . . [Probation] determined

However, the urinalysis tests may have been negative because Jittaphol used methamphetamine sporadically or in small doses. One study, submitted by Jittaphol, explains that:

> [S]weat testing for drugs of abuse is increasing, especially in criminal justice programs. One reason for this increase is sweat testing may widen the detection window compared to urine testing. Drug metabolites are rapidly excreted in urine limiting the window of detection of a single use to a few days.

Ex. 29, Huestis et al., <u>Monitoring Opiate Use in Substance Abuse Treatment Patients with Sweat and Urine Drug Testing</u>, 24 Journal of Analytical Toxicology 509, 509 (2000).[13]

Jittaphol admitted that she used methamphetamine sporadically in the past. More specifically, she testified that, after she first used methamphetamine about eight years ago, she used it "once in a while" and "not really often." Apr. 4, 2022 Tr. at 116:4-5, 17-18. She also stated that she could "choose that [she] wante[d] to use like [at] some parties and fun with friends." <u>Id.</u> at 116:22-23.

---

that that would be an appropriate way to test her given some kind of sensitive issues that she had reported early on" concerning her gender identity. Apr. 4, 2022 Tr. at 35:1-2, 8-10.

[13] In <u>Alfonso</u>, the court made a similar finding that "the sweat patch has the potential to provide a more accurate picture of an offender's drug use. Whereas a urinalysis is essentially a snapshot that provides a picture of drug use over a 72-hour period, the sweat patch is worn continuously." 284 F. Supp. 2d at 196.

Methamphetamine can typically be detected in urine tests for three to seven days after the last dose, depending on the amount used and, therefore, its use may not be captured by a urine test. See Ex. 14, American Addiction Center, How Long Does Meth Stay in Your System? (Jan. 31, 2022). It is also possible that Jittaphol used a low dosage of methamphetamine, which made it undetectable in her urine tests.[14]

Therefore, the court finds that probable cause exists to believe that Jittaphol violated state and federal law by possessing and using methamphetamine in January 2022 and in about March 8 to 18, 2022. See 21 U.S.C. §844; M.G.L. ch. 94C, §34. However, in view of the inconsistency between Jittaphol's negative urinalysis results and the positive sweat patch results, as well as her subsequent negative sweat patch results, the court does not find that there is clear and convincing evidence that Jittaphol used methamphetamine in January and March 2022.

Jittaphol's license to give massages expired in January 2021. See Apr. 8, 2022 Tr. at 12:24-13:11. She testified that after being arraigned in this case, she gave massages in homes without being licensed. See Ex. 6, Release Status Report at 2; Apr. 4, 2022 Tr.

---

[14] In Meyer, the court also noted that "the negative urine samples could have occurred because the amount of cocaine that [the defendant] consumed was simply too small to register a positive result through urinalysis." 483 F.3d at 870; see also Alfonso, 284 F. Supp. 2d at 196.

at 119:3-10. It is not proven that she did so after March 8, 2022, when her conditions were modified.

However, after March 8, 2022, Jittaphol changed employment, and began employment in addition to working in a restaurant, without informing Probation and seeking its permission as ordered. On March 23, 2022, Probation met with Jittaphol at Emerald Massage, where she was working as a massage therapist. See Ex. 4, March 28, 2022 Petition for Summons (Dkt. No. 58) at 2. Jittaphol had not previously reported this proposed employment to Probation. See id.[15]

If the court had been informed in advance of this proposed employment, it would not have authorized it. Emerald Massage is located at the former address of Mantra Dhevi Spa, the massage parlor that was owned by Jittaphol and is at the heart of this case because unlawful sexual activity occurred there. See Ex. 6, Release Status Report at 3. Jittaphol testified that, in September 2021, she sold her massage business and transferred ownership to

---

[15] Jittaphol was also required to "fully inform the Probation Office concerning her current employment so it can decide if that employment is permissible and appropriate." March 9, 2022 Order (Dkt. No. 55). Probation reports that, on March 8, 2022, Jittaphol "clarified that she was only working at the restaurant." Apr. 4, 2022 Tr. at 69:1-2. Therefore, if Jittaphol had commenced employment at Emerald Massage before her conditions were modified, her failure to report that employment on March 8, 2022 constitutes a violation of the conditions of her release.

the owner of the restaurant where she also currently works. See Apr. 4, 2022 Tr. at 125:21-126:7.

Jittaphol was giving a male customer a massage when her Probation officer arrived. See id. at 80:17-20, 112:17-113:8; Ex. 6, Release Status Report at 3. Jittaphol testified that the man had been a customer of Mantra Dhevi Spa. See Apr. 8, 2022 Tr. at 45:7-24. When the customer arrived, he told Jittaphol that he was "glad this place was open again." Id. at 46:13-14. On March 23, 2022, the customer paid Jittaphol, in cash, $80 for the massage and gave her a $20 tip. See id. at 47:10-48:1. Jittaphol kept the full $100, claiming unpersuasively that the new owner said she could. See id.

As indicated earlier, Jittaphol's massage therapy license expired in January 2021, and has not been renewed. See Apr. 8, 2022 Tr. at 12:24-13:11. However, according to her testimony, Jittaphol worked as an unlicensed massage therapist when she was "self-employed by providing massages for income" following her arraignment in October 2021, and at Emerald Massage on March 23, 2022. Ex. 6, Release Status Report at 2; see also Apr. 4, 2022 Tr. at 119:3-10; Apr. 8, 2022 Tr. at 13:12-14. Jittaphol's work as a massage therapist without a license was a violation of state law. See M.G.L. c. 112 §228(a) ("No person shall hold himself out to others as a massage therapist or practice massage or massage therapy unless he holds a valid license issued in accordance with

24

this chapter."). Although not a crime, and not an alleged violation of Jittaphol's conditions of pretrial release, the fact that she worked illegally as a massage therapist after being charged in this case is additional evidence of Jittaphol's unwillingness to comply with her legal obligations.

On March 28, 2022, Probation filed a Petition for Summons, advising the court that the sweat patches worn by Jittaphol between March 8, 2022 and March 18, 2022 returned positive for the presence of methamphetamine, that Jittaphol began working as a massage therapist at Emerald Massage without reporting this change in employment to Probation, and that she failed to attend treatment with CMA on March 26, 2022, and treatment with CPC on March 10, 2022. See Ex. 4, March 28, 2022 Petition for Summons (Dkt. No. 58).

On April 14, 2022, after the court had decided to revoke Jittaphol's release and was drafting this Memorandum to inform the parties of its decision, Probation filed another Petition for Summons (Dkt. No. 76, ex parte and under seal), reporting that the sweat patch worn by Jittaphol between March 24, 2022 and April 1, 2022 returned positive for the presence of methamphetamine. Again, this period includes a scheduled hearing in this case. However, as the petition was filed after the court had decided to revoke Jittaphol's release and is not material to that decision, the court will not conduct a hearing on the latest alleged violation and has

25

not considered it in deciding whether to revoke Jittaphol's release.[16]

IV. DISCUSSION

In view of the foregoing facts, the court finds that there is probable cause to believe that Jittaphol used and, therefore, possessed methamphetamine in October 2021. Probable cause also exists to believe that Jittaphol used and possessed methamphetamine in January 2022 and between March 8 and 24, 2022. As indicated earlier, the possession of methamphetamine is both a state and federal crime. See 21 U.S.C. §844; M.G.L. ch. 94C, §34.

In addition, there is clear and convincing evidence that Jittaphol committed six other violations of the conditions of her pretrial release by: (1) failing to report as directed by Probation for substance abuse treatment at SSTAR on November 22, 2021; (2) failing to report as directed for substance abuse treatment at SSTAR on November 30, 2021; (3) failing to participate as directed in long-term inpatient treatment after she left the BHN treatment program in December 2021; (4) failing to fully participate in CPC treatment by missing her first scheduled appointment two days after the March 8, 2022 hearing; (5) failing to fully participate in CMA treatment by missing a session on March 26, 2022; and (6) failing

---

[16] The court is ordering that the April 14, 2022 petition be unsealed and served on the parties.

to inform Probation and seek its permission before she began new or additional employment at Emerald Massage.

The findings of probable cause to believe that Jittaphol committed crimes while released pending resolution of her case and of clear and convincing evidence that she repeatedly violated other conditions of her release require that the court decide whether it is proven by a preponderance of the evidence that Jittaphol is unlikely to abide by any condition or combination of conditions of release. See 18 U.S.C. §3148(b)(1)(A) & (B) and (b)(2)(B); Gotti, 794 F.2d at 777; Aron, 904 F.2d at 227. The court finds that this standard has been met. Therefore, the express terms of the statute, §3148(b), which states that in these circumstances the court "shall enter an order of revocation and detention," require that Jittaphol now be detained. See, e.g., United States v. Quirion, 808 F. Supp. 2d 343, 348 (D. Me. 2011) ("The Court concludes that these findings mandate the revocation of Mr. Quirion's presentencing release order and his detention pending the sentencing hearing."); United States v. Rivera, 104 F. Supp. 2d 159, 160 (D. Mass. 2000) (concluding that "revocation of release and detention are . . . required" when both prongs for "mandatory revocation of release under 18 U.S.C. §3148(b)" are satisfied). However, if the court has the discretion to continue Jittaphol's release on the existing or modified conditions, it is exercising it to revoke her release.

More specifically, Jittaphol's repeated violations since
being released on conditions on October 26, 2021 persuade the court
that she is either unwilling or unable to conform her conduct to
the requirements of the court orders that those conditions
constitute. Her first violation occurred three days after her
release when she tested positive for methamphetamine. No action
was taken on that violation because Probation granted Jittaphol's
request for drug treatment. Yet Jittaphol promptly twice failed to
report as directed by Probation to begin that treatment with SSTAR.
Nevertheless, Probation arranged for Jittaphol to enter treatment
with BHN. Although Jittaphol successfully completed the first two
phases of that treatment, she refused to engage in further
inpatient treatment as recommended by BHN and directed by
Probation.

The court could, and perhaps should, have decided whether to
revoke Jittaphol's release at the January 20, 2022 hearing.
Instead, it continued the hearing on the pending petitions to
provide Jittaphol another opportunity to demonstrate that she
would obey the conditions of her release. However, Jittaphol
subsequently twice tested positive for methamphetamine on sweat
patch tests, providing probable cause to believe that she continued
to use methamphetamine occasionally, as she had at times in the
past. On March 8, 2022 the court explained to Jittaphol that it
was essential that she fully comply with all of the conditions of

28

her release, including by fully participating in outpatient treatment with CPC. She promised to do so. Nevertheless, Jittaphol skipped her next scheduled session on March 10, 2022. She also skipped the March 26, 2022 CMA meeting she was directed to attend.

In addition, during the full period of her release, Jittaphol worked as an unlicensed massage therapist. She testified that she started working at Emerald Massage on March 23, 2022, the day her Probation officer came to see her. She admits that she did not, as ordered on March 8, 2022, inform her Probation officer of this proposed employment so Probation and the court could decide whether to authorize it. This is not a minor infraction. Emerald Massage is essentially Jittaphol's former business, Mantra Dhevi Spa, under new ownership at the same location. In pleading guilty, Jittaphol admitted that illegal sexual services were provided at the massage parlor when she owned it. She was providing services to one of her former male customers when her Probation officer arrived on March 23, 2022. He paid her $100 in cash. She kept all of it. If informed in advance that Jittaphol hoped to work at Emerald Massage, the court would not have authorized it because of the unacceptable risk that Jittaphol would again be engaged in a business providing unlawful services, now as an individual not licensed to give even an otherwise lawful massage.

In contrast to 18 U.S.C. §3148(a)(2)(A), §3148(a)(2)(B) does not, by its terms, require that the court consider the factors set

forth in §3142(g) in deciding whether to revoke release and detain a defendant because she is unlikely to obey any combination of conditions of release. Nevertheless, the court has considered the relevant §3142(g) criteria. Jittaphol has pled guilty so there is, therefore, no risk that an innocent person will spend time in custody if Jittaphol is detained until her sentencing on June 14, 2022. Jittaphol has a history of drug abuse and of not fully participating in treatment for it. Her two positive drug tests provide probable cause to believe that she has continued to commit crimes while released.

At the April 8, 2022 hearing, the Assistant United States Attorneys, but not Probation, suggested that detaining Jittaphol for a week might be an appropriate response to the many violations of the conditions of her release. The court has also considered whether revoking Jittaphol and placing her in home confinement would be appropriate. The court is persuaded, however, that a short term of detention would not be sufficient to persuade Jittaphol to obey the conditions of her release in the future. If placed in home confinement, Jittaphol could obtain methamphetamine and use it at home, which she testified was her prior practice.

In view of the foregoing, the court is revoking Jittaphol's release and ordering that she report on April 21, 2022 to the United States Marshal. The Marshal has been informed that Jittaphol has male genitalia, but identifies and presents as a female. The

Marshal has assured the court that the facility at which Jittaphol will be detained has experience with housing such individuals safely and securely, and will do so with regard to Jittaphol.

## V. THE BINDING PLEA AGREEMENT

As explained earlier, the parties entered into a Rule 11(c)(1)(C) binding plea agreement that, if accepted, would require the court to impose a sentence of three years probation rather than any time in custody. At the January 20, 2022 hearing, the court declined to accept Jittaphol's guilty plea and deferred until sentencing deciding whether to accept the plea agreement in part because of concern it expressed that a sentence of probation would not, among other things, "afford adequate deterrence to criminal conduct," by Jittaphol and others as required by 18 U.S.C. §3553(a)(2)(B). The parties' subsequent submissions persuaded the court to accept Jittaphol's guilty plea on March 8, 2022, and defer until the June 14, 2022 sentencing the decision whether to accept the binding plea agreement or give Jittaphol the opportunity to withdraw her guilty plea. See Mar. 8, 2022 Tr. at 4:16-19, 20:10-14.

It remains uncertain whether the court would have accepted the binding plea agreement if Jittaphol had not continued to violate the conditions of her pretrial release after March 8, 2022. It is now, as a practical matter, not possible for the court to accept it and sentence Jittaphol solely to probation because she

31

is being detained and that period of detention before sentencing will be credited to any time in custody to which Jittaphol is sentenced. See 18 U.S.C. §3585(b). While she may at sentencing advocate a sentence of time-served, she cannot receive a sentence of probation with no time in custody.

Accordingly, the court is, pursuant to Rule 11(c)(5)(A), rejecting the plea agreement and, pursuant to Rule 11(c)(5)(B) and (C), giving Jittaphol until May 2, 2022, to inform the court whether she wishes to withdraw her guilty plea and, if she does not withdraw it, state that she understands that she will receive a sentence less favorable than probation.[17]

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Jittaphol's release is REVOKED. She shall report, by 12:00 noon on April 21, 2022, to the United States Marshal at the Moakley Federal Courthouse, to be DETAINED at least until sentenced.

2. Jittaphol:

(a) Is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

---

[17] Upon request the court will have Jittaphol transported from the facility at which she is detained to provide her this information again in open court. See Fed. R. Crim. P. 11(c)(5).

(b) Shall be afforded reasonable opportunity for private consultation with counsel; and

(c) On order of a court of the United States or on request by an attorney for the government, shall be delivered to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding by the person in charge of the corrections facility in which Jittaphol is confined.

3. Jittaphol's Rule 11(c)(1)(C) binding plea agreement (Dkt. No. 7) is REJECTED. She shall, by May 2, 2022, report whether she wishes to withdraw her guilty plea and go to trial or maintain her guilty plea with the understanding that her sentence will be less favorable than probation.

4. The April 14, 2022 Petition for Action on Conditions of Pretrial Release (Dkt. No. 76, ex parte and under seal) is UNSEALED and shall be served on the parties.


UNITED STATES DISTRICT JUDGE

33